IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JOANN CONLEY, an individual,

           Plaintiff,

v.                                    CIVIL ACTION NO. 3:09-0327

CINGULAR WIRELESS EMPLOYEE
HEALTH AND BENEFITS PLAN, a New
York Employee Benefit Plan, et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are cross-motions for summary judgment filed on behalf of Plaintiff Joann Conley and Defendants Cingular Wireless Employee Health and Benefits Plan, Broadspire Services, Inc., and Gates McDonald, a Nationwide Company. For the following reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment [doc. no. 22] and **GRANTS** Defendants' Motion for Summary Judgment [doc. no. 23].

Plaintiff filed this action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461. In her Complaint, she alleges she was a covered employee and was wrongfully denied her benefits under the Plan. Defendants assert the claim is without merit.

**I.**
**FACTUAL AND PROCEDURAL HISTORY**

Plaintiff worked as a customer service representative for Defendant Cingular since September 2, 2003. On February 21, 2005, Plaintiff experienced a heart attack and was admitted to Kings' Daughters' Medical Center. Her past history was reported as positive for hypothyroidism,

hypertension, hyperlipidemia, and uncontrolled diabetes mellitus type 2. On February 22, 2005, Dr. Chris Epling performed a heart catheterization on Plaintiff and found Plaintiff suffered from high grade coronary artery disease. Dr. Epling inserted a stent and recommended standard post interventional care and continued aggressive risk factor modification. Plaintiff's follow-up appointment was scheduled for April 6, 2005.

On February 25, 2005, Plaintiff applied for short term disability (STD) benefits. Broadspire approved the request and paid her benefits through March 18, 2005. In its letter to Plaintiff, Broadspire specifically informed Plaintiff that if she was unable to return to work on March 19, she was required to file for an extension of her STD benefits and provide specific medical information. The requested information included a "Completed Attending Physician Statement . . . or Copies of all office notes and test results from any and all doctor visits[;] Reason your recovery has been delayed[;] Functional abilities[; and] Expected return to work date." *Letter from Sonji Clark-Watson of Broadspire to Plaintiff* (dated Feb. 25, 2005). If Plaintiff did not supply such information, Broadspire told Plaintiff that she would not receive any additional benefits after March 19.

Plaintiff was examined by her primary care physician Dr. Loren Ledford on March 8, 2005. Dr. Ledford recommended Plaintiff should attempt to control her blood pressure and blood sugar levels and follow-up with Dr. Epling. On March 11, Dr. Epling completed another Attending Physician Statement. In this Statement, he stated he was unable to release Plaintiff to work, but he expected significant clinical improvement by April 13, 2005.

Dr. Epling examined Plaintiff on March 16. His clinical notes state that Plaintiff was doing well from a physical standpoint, with no chest pain, but she reported some general malaise and increase in stress. On March 18, Dr. Ledford completed an Attending Physician Statement and noted Plaintiff suffered from a "Non-ST acute myocardial infraction" and uncontrolled diabetes. *Health Care Provider Certification* (March 18, 2005). Dr. Ledford opined that Plaintiff could return to her normal activities on June 1, 2005.

Claim Examiner Sonji Watson also contacted Plaintiff on March 18 to get a medical update. Notes from Ms. Watson state that Plaintiff told her she faxed the updated forms that day, but Ms. Watson informed Plaintiff that they were not received. Ms. Watson wrote that she told Plaintiff to check on the next business day to make sure they were submitted.

On March 22, Ms. Watson again spoke with Plaintiff and told her she needed an update of her medication by March 28 for a final determination. She also explained that the Attending Physician Form she received said to see office notes which Ms. Watson did not have. She asked Plaintiff to have Drs. Epling and Ledford fax their March office notes to Broadspire.

On March 23, Ms. Watson contacted Plaintiff and informed her they received the "meds" from Dr. Ledford, but they contained insufficient information to extend benefits. Plaintiff informed Ms. Watson that she was attending cardiac rehabilitation three times per week, and Ms. Watson requested those records from Plaintiff.

Thereafter, on March 29, Ms. Watson verbally informed Plaintiff her claim for additional benefits was denied. Ms. Watson explained to Plaintiff that Broadspire needed her cardiac rehabilitation notes and those from Dr. Ledford which would support why she cannot return to work until June. Broadspire received the cardiac rehabilitation records on April 1. Upon review of those records, Broadspire verbally notified Plaintiff on April 7 and by letter dated April 8, that her claim was denied because she failed to submit proof of her disability.

Plaintiff had a follow-up appointment with Dr. Ledford on April 12. At the appointment, Plaintiff said she started smoking again and stopped going to cardiac rehabilitation. She also had fasting blood sugar levels of 200. Dr. Ledford noted Plaintiff was noncompliant with her medical management and she was encouraged to restart cardiac rehabilitation and stop smoking. Thereafter, Dr. Ledford wrote a letter on April 20, in which she stated Plaintiff suffered from "ongoing high risk factors for heart disease including uncontrolled type II diabetes, uncontrolled hypertension and tobacco use." *Letter from Dr. Ledford* (April 20, 2005). Dr. Ledford further opined that Plaintiff "may not work in any capacity until she has completed formal cardiac rehabilitation and demonstrate tight control of her diabetes and high blood pressure." *Id.* Dr. Ledford stated he did not know precisely when Plaintiff would be able to return to work, but he said "it is likely she will be able to resume light duty sometime in June, 2005." *Id*.

Plaintiff was examined by Dr. Leford again on May 12. At that appointment, Dr. Ledford said her blood sugar levels were 251 and out of control and he opined that "returning to work would be to risky + would jeopardize her general health. Stress level needs kept to a

minimum." *Clinical Notes from Dr. Ledford* (May 12, 2005).  Dr. Ledford referred Plaintiff to an endocrinologist.

On May 18, Dr. Epling examined Plaintiff.  Based upon his examination and a stress test performed on May 9, Dr. Epling stated Plaintiff had a "very good functional capacity despite having the infarction in that particular zone and was able to walk for 8 mets and did not have any significant anginal chest pain." *Clinical Notes from Dr. Epling* (May 18, 2005).  She also had a very good ejection fraction.  Dr. Epling stated Plaintiff was doing well from a cardiovascular standpoint and he would give her some medication for her sporadic episodes of chest pain.

On June 8, Plaintiff was seen by Dr. George Borst III, an endocrinologist, for her diabetes.  Upon examination, he noted she also had an enlarged thyroid.  A few days later, she was examined by Dr. Leford on June 13.  Dr. Ledford noted an increase in Plaintiff's fatigue level and stated her blood sugar levels remain uncontrolled.  Dr. Ledford wrote that he believed Plaintiff was unable to tolerate any work.  Dr. Borst saw Plaintiff again on July 13.  At that visit, Dr. Borst noted a blood sugar level of 287.  On July 18, Dr. Ledford noted Plaintiff's blood sugar at home was 280, and he recommended Plaintiff adhere to a 1800 calorie ADA diet.

On July 29, Plaintiff was seen by Dr. Ledford to get a temporary disability letter.  In the clinical note, Dr. Leford wrote Plaintiff was beginning to improve, but marked her likely return to work would be November 1, 2005.  On September 2, Plaintiff had a follow-up appointment with Dr. Borst.  At that time, her A1C test was 9.4 and her glucose level was 179.

On September 21, Plaintiff sought psychotherapy treatment for the first time. Notes from that session detail Plaintiff's difficulties. Findings were made of major depression, moderate with "psych" features, recurrent and anxiety disorder, not otherwise specified. There also was a comment to rule out schizo affective and bi-polar disorder type II.

On September 27, Plaintiff saw Dr. Ledford to obtain disability paperwork. At the time her blood sugar was said to be 210 while fasting at home. On October 13, 2005, Plaintiff was examined by Dr. Borst who noted a fasting blood sugar level of 200.

Plaintiff visited her psychotherapist again on October 19. Plaintiff's mental status had not changed. She was given samples of Cymbalta to try.

In the meantime, Plaintiff obtained counsel and, by letter dated August 29, 2005, appealed the April 8 decision. On September 29, Ms. Watson sent Plaintiff a "Corrected Letter" which states Plaintiff had informed her that Dr. Epling was her treating cardiologist, and Ms. Watson had received medical information regarding Plaintiff's cardiac rehabilitation in support of her claim for further benefits. However, "[b]ased on the information submitted, it was determined that the clinical information submitted did not provide any objective clinical findings which would constitute . . . [Plaintiff] being disabled from performing . . . [her] job duties." *Letter from Ms. Watson to Plaintiff* (Sept. 29, 2005). The following day, Broadspire agreed to give counsel for Plaintiff an additional thirty days to submit additional medical evidence.

On October 27, Plaintiff's counsel submitted additional medical records from Drs. Ledford and Epling and the psychotherapist, Dr. Jack Borders. On or about November 28, 2005, Plaintiff's claim was referred for peer review to Dr. Frank Pearl, a cardiologist, Dr. Tamara Bowman, an endocrinologist, and Dr. Joseph Cimino, a psychologist.

Upon his review, Dr. Pearl opined from a cardiac standpoint that there was no objective medical evidence to support any restrictions or limitations from her sedentary occupation. Likewise, Dr. Borders found the documentation submitted fails to substantiate emotional, cognitive, or behavioral impairments which would prevent her from performing her job from March 19 through the present. Although Dr. Bowman noted Plaintiff's blood sugar levels were sometimes out of range, she also found no found no objective clinical evidence to support a finding she could not perform her job because of her diabetes, hypertension, or multi-nodular goiter. In her review, Dr. Bowman also stated she spoke with Dr. Ledman about Plaintiff. Dr. Bowman said she specifically asked Dr. Ledman if there were any objective physical examination findings that prevented Plaintiff from doing her job. Dr. Ledman reportedly responded that Plaintiff had subjective complaints of fatigue and occasional chest pain, and he gave her the benefit of the doubt. Dr. Bowman stated Dr. Ledman was unable to cite to any objective medical examination findings indicating a functional deficit.

Based upon these reviews, Broadspire denied Plaintiff's appeal on January 13, 2006. In the denial, Broadspire found there to be insufficient medical evidence to verify significant

impairments in functioning which would prevent Plaintiff from working her customary occupation. Broadspire specifically noted a lack of

> documentation of any physical examination findings to support complications of diabetes or hypertension, documentation of recent blood sugar values, evidence of recent declining ejection fraction, evidence of recent substantial myocardial damage, documentation of further requirement of emergency room treatment or hospitalization, formal mental status examination, results of performance-based tests of psychological functioning, etc.

*Letter from Veronica Boyd, Appeal Coordinator for the Broadspire Appeal Committee to Attorney Mark Underwood*, at 2 (January 13, 2006). Thereafter, the STD claim was closed and the file was transferred to the Plan's new third-party administrator, Gates McDonald.

On September 14, 2006, Plaintiff's attorney's office sent a letter to Gates McDonald. The letter states that Broadspire has refused to send a copy of the Administrative Record, which was assumed to be attributable to Cingular's switch to Gates McDonald. The letter further provided that Plaintiff was not given the opportunity to appeal or apply for long-term disability. Therefore, it requested the case be re-opened and a copy of the Administrative Record be forwarded to his office. On October 25, 2006, Gates McDonald responded that the case was closed but, upon receiving a signed release, it would send the file. Plaintiff brought this action on April 1, 2009, appealing the final decision.

## II.
## STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. The nonmoving party must satisfy its burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. In reviewing the evidence of this case, the Court finds that there is no genuine issue of material fact at issue. Accordingly, this case may be properly disposed of on summary judgment.

Under ERISA, courts must review an administrator's decision to deny pension plan benefits *de novo*, unless the plan itself confers discretionary authority upon the administrator "to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). When an administrator possesses such discretion, courts may review the eligibility determination only for an abuse of discretion. *Id*; *Barron v. UNUM Life*

*Ins. Co. of Am.*, 260 F.3d 310, 315 (4th Cir. 2001) (citation omitted). Under this standard, an administrator's decision "will not be disturbed if it is reasonable," even if we "would have come to a different conclusion independently." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997). To be reasonable, the decision must be "the result of a deliberate, principled reasoning process" and be "supported by substantial evidence." *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir.1997) (internal quotation marks and citation omitted). However, where an entity both evaluates claims for benefits and pays benefit claims, a conflict of interest exists. *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008). "If a benefit plan gives discretion to an administrator or fiduciary who *is operating under a conflict of interest*, that conflict must be *weighed as a factor* in determining whether there is an abuse of discretion." 128 S. Ct. at 2348 (emphasis added in *Metropolitan Life;* quoting, in part, *Firestone Tire & Rubber Co.*, 489 U.S. at 115; internal quotation marks and other citation omitted)).[1]

---

[1]In considering whether an administrator abused its discretion, the Fourth Circuit identified in *Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000), a number of non-exclusive factors that a court may consider. These factors include:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the

(continued...)

Although the parties seem to agree that an abuse of discretion standard applies to this case, Plaintiff argues that both the Administrative Committee and Broadspire are conflicted administrators, and this Court must give increased emphasis to this factor in determining whether an abuse of discretion exists. Upon review, the Court disagrees.

The Plan at issue here is self-funded.[2] Under the Plan, the Administrative Committee[3] is responsible to determine, inter alia, "all questions relating to the eligibility of Employees to participate in the benefits of the Plan" and "to determine the benefits of the Plan to which any Participant or Beneficiary may be entitled." *Cingular Wireless Non-Bargained Disability Plan*, at § 6.3(c) and (d) (as adopted effective Dec. 31, 2004). In addition, the Administrative Committee is given "sole and absolute discretion to make all determinations under the Plan, [and] to interpret the provisions of the Plan . . . ." *Id*. at § 6.7, in part. Section 6.5 of the Plan also gives the Administrative Committee the power to delegate its administrative responsibilities. In

---

[1](...continued)
   fiduciary's motives and any conflict of interest it may
   have.

201 F.3d at 342-43 (footnote omitted).

[2]Section 7.1 of the Plan provides it "will be funded by contributions from Participating Companies and Participants (if applicable). Contributions for disability benefits are actuarially determined and are held in trust in a Code Section 501(c)(9) trust responsible for the payment of benefit claims." *Cingular Wireless Non-Bargained Disability Plan*, at § 7.1 (as adopted effective Dec. 31, 2004).

[3]Section 1.15 states "Plan Administrator means the named fiduciary for the Plan with the authority set out in Section 7.1. The Board of Directors has appointed the Administrative Committee as the Plan Administrator. The Administrative Committee may delegate to third parties, including the insurers or Claims Administrators, the rights and duties of the Plan Administrator." *Id*. at § 1.15.

accordance with the Plan, the Administrative Committee has delegated its power, discretion, and authority to determine disability benefits to Broadspire, a third-party administrator.[4]

Given the fact the Plan is self-funded and there is a third party making disability determinations, the Court finds Plaintiff has failed to demonstrate that the Court should emphasize the conflict of interest factor. *See Savoy v. Federal Express Corp. Long Term Disability Plan*, No. DKC 09-1254, 2010 WL 3038721, *5 (D. Md. July 30, 2010) (finding no conflict of interest exists where claim paying administrator did not fund, administer, or insure plan). A significant conflict of interest is not established merely because Broadspire is paid for its services. *See Roberts v. American Elec. Power Long-Term Disability Plan*, No. 3:07-0593, 2010 WL 2854299, *8 (S.D. W. Va. July 19, 2010) (finding no evidence of a significant conflict of interest by virtue of the fact that an independent claims administrator, vested with sole discretion in deciding claims, "participates in a competitive market and receives compensation for its services"). Accordingly, the Court will apply the abuse of discretion standard with no greater emphasis on the conflict of interest factor.

## III.
## DISCUSSION

In her motion, Plaintiff first argues that this Court should declare Plaintiff disabled under the Plan because she was declared disabled by the Social Security Administration. As support, Plaintiff cites *Hines v. Unum Life Insurance Co. of America*, 110 F. Supp.2d 458, 468

---

[4]Defendants admit the Administrative Committee has retained the right to make final determinations on whether an individual qualifies as an employee, however, it is not an issue in this case as Plaintiff was not denied on that basis.

(W.D. Va. 2000), for the proposition that a plan administrator should give a social security disability award significant weight where the definitions of disability in the social security regulations and the plan are sufficiently analogous. However, *Hines* also states that "[w]hen reviewing an administrator's decision, courts may not consider extrinsic evidence, that is, any evidence not brought before the administrator, initially or in subsequent administrative reviews." *Id.* at 464 (citing *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 608-09 (4th Cir. 1999)); *see also Seiser v. Unum Provident Corp.*, 135 Fed. Appx. 794, 799 (6th Cir. 2005) (holding "that where a plan administrator has denied a disability claim, a remand to the administrator to consider a contrary SSA determination issued after the administrative decision is unwarranted"). Here, the social security decision was not decided until January 15, 2008, over two years after Broadspire issued its final decision on January 13, 2006. As this decision was not available to Broadspire when it made its final decision, it was not part of the administrative record and is irrelevant.[5]

Next, Plaintiff argues the Administrative Record is incomplete because it does not contain any medical records prior to February of 2005, nor any records after October of 2005. Plaintiff argues that these records were available to Broadspire because she signed HIPPA authorizations. The HIPPA releases Plaintiff points to in the Administrative Record are broad

---

[5]Moreover, it appears from the medical records attached to the Complaint that Plaintiff suffered additional medical problems after Broadspire made its final decision. On January 15, 2007, Plaintiff underwent a second catherization after being admitted to the hospital with chest pains. In addition, on March 15, 2007, Plaintiff went to the emergency room complaining of neck pain and slurred speech. She was diagnosed with Bell's palsy. Although there is no indiction in the social security decision attached to the Complaint what evidence the social security administration considered in approving her benefits, it seems likely that these additional medical records were considered and supported her benefit award. Thus, the social security award very well may have been based on evidence that was not even in existence at the time Broadspire made its decision.

authorizations to get medical information from all doctors, hospitals, and other providers, and they are not directed to any particular doctor or facility. Plaintiff does not indicate any specific record that should have been included in Broadspire's review, how that record is relevant, or how Broadspire should have known about the record's existence. In addition, in September of 2005, Broadspire gave Plaintiff's counsel an extension of time to submit additional medical evidence. However, it appears that Plaintiff did not submit any records or treatment prior to February 2005, which she now asserts will support her claim for disability. As Plaintiff has completely failed to show why this case should be remanded for consideration of additional evidence, the Court **DENIES** her request for remand. *See Elliott v. Sara Lee Corp.*, 190 F.3d 601, 609 (4th Cir. 1999) (stating remand should be granted sparingly and it "is most appropriate 'where the plan itself commits the trustees to consider relevant information which they failed to consider or where [the] decision involves records that were readily available and records that trustees had agreed they would verify'" (citations omitted)).

In her Response to Defendants' Motion for Summary Judgment, Plaintiff also argues that Broadspire failed to consider the combination of the side effects of her medications. Plaintiff cites Drugs.com and lists the potential side effects of her medications. However, she does not indicate what, if any, of these side effects she actually has experienced. In addition, it appears that at least some of the drugs listed in her Response were those she was taking in January 2007, which was after Broadspire made its final decision. Given these facts, the Court cannot say Broadspire abused its discretion with regard to her medications.

In considering the evidence that was before Broadspire when it issued its final decision, the Court cannot say it abused its discretion in denying Plaintiff's claim for STD benefits. Under the Summary Plan Description, total disability for purposes of "STD benefits means that due to an illness or injury you are unable to perform your customary job or another available job assigned by your Company with the same full- or part-time classification for which you are reasonably qualified." *Summary Plan Description*, at 3. Although there is evidence in the record that Plaintiff suffered from a number of medical issues, the Court cannot say that Broadspire abused its discretion in determining the objective medical evidence failed to establish Plaintiff could not return to work in her sedentary position as a customer service representative. Broadspire was not required to accept the conclusory opinions of her doctors that she could not return to work, and all three doctors who completed an independent peer review found the medical records in their specific specialties insufficient to establish she could not perform her job. Upon review, the Court agrees with those assessments. Thus, given the medical evidence submitted in this case, the Court finds Broadspire's decision to deny Plaintiff continued STD benefits was reasonable and supported by substantial evidence and Broadspire did not abuse its discretion.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment [doc. no. 23] and **DENIES** the like motion by Plaintiff [doc. no. 22].[6]

---

[6]Although Plaintiff claims in her Complaint that she applied for long-term disability benefits she does not discuss that allegation in her Motion for Summary Judgment. Therefore, the Court will not address it.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

        ENTER:      September 1, 2010

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE